with their bar fixtures, there would not be the shadow of claim that they did not pass under the covenant of the lease to the owners. By connecting the bar fixtures with them, so that the whole improvement constituted but one piece of work, the ceiling and other improvements were not converted into trade fixtures. The removal of the improvements of the property constituted a breach of the covenant, and the plaintiff should have had judgment for the very moderate damages which she claimed.

Judgment reversed; new trial ordered, with costs to the appellant to abide the event. All concur.

---

## CARPENTER v. FISHER.

(Supreme Court, Appellate Division, Fourth Department. December 19, 1896.)

BOUNDARIES—EVIDENCE—SURVEY.
> The testimony of a surveyor as to his location of a boundary line is incompetent where he had no means of verifying his survey, and located the line wholly from an ancient map, which was not proved to be correct, and which does not agree with another map of the same date.

Appeal from special term, Monroe county.

Action by Anna H. Carpenter against Hattie S. Fisher to enjoin the obstruction of an alley through which plaintiff claims an easement of right of way. From a judgment entered on a decision of the trial judge in favor of defendant, plaintiff appeals. Affirmed.

The opinion of Mr. Justice RUMSEY at special term is as follows:

The plaintiff and defendant are the owners of adjoining lots on Mt. Hope avenue, in the city of Rochester. Between the lots there has been for many years an alley, which now extends from Mt. Hope avenue westerly to the barns and carriage house of the defendant. The alleyway has been used, not only by the defendant, but occasionally, when it was convenient, by those who occupied the lot owned by the plaintiff. It appears from the testimony that the defendant and her ancestor have been in possession of the lot on which she now lives for a great many years; that the north fence of her lot was along where now the south fence of the alley stands, and that there was no fence on the north side of the alley; but that the land north of the defendant's premises, including that now occupied by the plaintiff, lay open for a great many years. The two lots are bounded at the rear by the Erie Canal feeder. While the land was open and unfenced, there were along the feeder several boat yards in which canal boats were built. The owners of these yards, whenever they desired, were accustomed to drive along on the north side of the fence of the defendant's lot, down to these boat yards, carrying lumber and other supplies for their own use. Sometimes they drove over the ground now occupied for an alley, but when it was not convenient to drive there they drove further north, not confining themselves to this particular ground. People who had occasion to go to the feeder also were accustomed to go down over this ground until the land was fenced. Some time about the year of 1851 or 1852, as it seems, a fence was put on the north side of the alley, and from that time on the alley still continued to be used to some extent for access to the feeder by people on foot and in vehicles, and was used only by the owners of the lots on each side, being the lot occupied by the plaintiff and that occupied by the defendant. The nature of this use does not clearly appear. It does appear, however, that Mr. Munger, the defendant's ancestor, who then occupied the lot on the north of the alley, put a gate at the Mt. Hope entrance to the alley for the purpose of controlling the use of it, and that this gate continued to be maintained by him and his heirs as long as they saw fit to do so. During all that time Munger

claimed to be the owner of the alley, and exercised whatever control over it he saw fit, and access to the premises now occupied by the plaintiff was had by Munger's permission, and under his authority. There seems to be no practical dispute in the evidence on that point. The plaintiff undertook to prove that the line between the lot of Munger and her lot ran through the alley about six feet from the north fence, and a surveyor testified that he located the line in that way, but it did not appear from the testimony that he had any personal knowledge of the location of that line, nor did it appear that he in any way verified his survey so that it could be relied upon as a correct statement of the location of the line. All that he pretended to do by way of locating the line was to refer to an ancient map, and locate the line as accurately as possible from that; but there was no evidence that the map thus referred to laid down the line where it ought to have been. On the contrary, it appeared that another map, equally ancient, or another copy of the same map, placed the line between the two lots coincident with the north line of the alley. It cannot be said, therefore, that there was any competent evidence that the alley had been laid out on each side of the true line between the lots, so that it might be inferred that it was intended to be used equally by the owners of each lot. It was claimed on the part of the plaintiff that the alley was a public alley, which all persons were entitled to use; but this claim was entirely unsupported by the testimony in the case. The plaintiff also insists that the owners of the lot upon which she now lives had acquired by adverse possession the easement of a right of way over said alley from Mt. Hope avenue to the buildings in the rear of her lot. The proof, however, upon this point, fails sadly. It was made to appear by a person who occupied the plaintiff's lot for some years before it was bought by the plaintiff that the use of the alley at that time was controlled by Mr. Munger, who occupied the lot of the defendant, and that the person then living upon the plaintiff's lot applied for and obtained from Munger permission to use the alley. . It was also shown that after that person had left the property in 1871 or 1872, an opening in the fence, by which access had been obtained to the plaintiff's lot from the alley, was closed by Munger's direction, and remained closed until the plaintiff came there, except when, upon one or two occasions, it was opened for a special purpose by the permission of Mr. Munger. These facts, which were thoroughly shown in the case, entirely overthrow the claim of adverse possession made on the part of the plaintiff. The plaintiff comes here claiming such a right in this alley as entitles her to prevent the defendant from exercising acts of ownership over it. The burden of the proof, of course, is upon her to establish her right, and, unless she succeeds in that, she cannot recover in the action. It is very clear that she has not succeeded in any aspect of the case, and for that reason the complaint must be dismissed.

C. D. Kiehel, for appellant.

W. A. Sutherland, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of RUMSEY, J., delivered at special term. All concur.

---

(11 App. Div. 220.)

## In re LANGDON'S ESTATE.

(Supreme Court, Appellate Division, Second Department. December 30, 1896.)

1. TAXATION—TRANSFER TAX—CONTINGENT REMAINDERS.

    A contingent remainder is not taxable where it was created by a will which took effect before, though the remainder vested after, the passage of Laws 1892, c. 399, § 1, taxing certain transfers as of the time when the transferee becomes beneficially entitled to the property in possession or expectancy, whether the transfer was made before or after the passage of the act.

2. WILLS—REMAINDERS—WHEN RIGHT OF SUCCESSION PASSES.

    A testatrix devised to her husband the use and enjoyment of her estate for life, with power to dispose of it by conveyance or will, and, failing such disposition by the husband, the remainder to pass on his death to certain legatees. The husband died, leaving a will providing that his wife's estate should be